**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **PAUL FALCONE,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | **CIVIL ACTION** |
| **v.** | : | |
| | : | |
| **SPEEDWAY LLC,** | : | |
| | : | **NO. 14-2188** |
| **Defendant.** | : | |

**M E M O R A N D U M**

**STENGEL, J.**                                   **January 19, 2017**

## I.      INTRODUCTION

This is a negligence action brought under Pennsylvania law. Defendant, Speedway LLC filed a motion for summary judgment. Because there are genuine disputes of material fact, I will deny the motion.

## II.      BACKGROUND

At about 9:00 p.m. on January 23, 2013, the plaintiff, Paul Falcone, pulled into the parking lot of defendant Speedway LLC's gas station in Orefield, Pennsylvania. Mr. Falcone was working at the time, driving a box truck that belonged to his employer Yocum Towing and Recovery, Inc. There to purchase diesel gasoline, Mr. Falcone parked the truck at a diesel fuel pump. As he stepped out of the truck, Mr. Falcone's foot slipped on a puddle of gasoline and he fell to the ground, hitting the pavement. He was knocked unconscious. A bystander eventually helped him to his feet. As a result of this fall, Mr. Falcone fractured his elbow and his tooth. He had to undergo a procedure to

1

extract the damaged tooth and part of a surrounding facial bone. He has undergone

several back surgeries. Mr. Falcone also alleges that he now suffers from severe back

pain, whiplash, headaches, loss of vision, a sleep disorder, weakness, problems with

balance, and numbness and tingling in his extremities.

Defendant does not dispute that Mr. Falcone was at its store on the night in

question. Nor does it dispute that Mr. Falcone slipped and fell on diesel fuel in its parking

lot. (Doc. No. 44 ¶ 19). Instead, defendant argues that summary judgment should be

granted because it had no actual or constructive notice. Based on the record before me,

this is clearly a genuine dispute of material fact for a jury to resolve.

## III.     LEGAL STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute

as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a). A factual dispute is "material" only if it might affect the outcome of the

case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). For an issue to be

"genuine," a reasonable fact-finder must be able to return a verdict in favor of the non-

moving party. Id.

A party seeking summary judgment initially bears responsibility for informing the

court of the basis for its motion and identifying those portions of the record that it

believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v.

Catrett, 477 U.S. 317, 322 (1986). A party asserting that a fact cannot be or is genuinely

disputed must support the assertion by citing relevant portions of the record, including

depositions, documents, affidavits, or declarations, or showing that the materials cited do

not establish the absence or presence of a genuine dispute, or showing that an adverse

party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c).

Summary judgment is therefore appropriate when the non-moving party fails to rebut the

moving party's argument that there is no genuine issue of fact by pointing to evidence

that is "sufficient to establish the existence of an element essential to that party's case,

and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

Under Rule 56 of the Federal Rules of Civil Procedure, the court must draw "all

justifiable inferences" in favor of the non-moving party. Anderson, 477 U.S. at 255. The

Court must decide "not whether . . . the evidence unmistakably favors one side or the

other but whether a fair-minded jury could return a verdict for the plaintiff on the

evidence presented." Id. at 252.

## IV.   DISCUSSION

As this is an action based on diversity of citizenship jurisdiction, I must apply

Pennsylvania law. Hunt v. U.S. Tobacco Co., 538 F.3d 217, 220 (3d Cir. 2008).

### A.   *Premises Liability Under Pennsylvania Law*

Under Pennsylvania law, the duty a landowner owes to a person on its land

depends upon whether the person is a business invitee, licensee, or trespasser. Trude v.

Martin, 660 A.2d 626, 630 (Pa. Super. Ct. 1995).  A business invitee is a "person who is

invited to enter or remain on land for a purpose directly or indirectly connected with the

business dealings with the possessor of the land." Charlie v. Erie Ins. Exch., 100 A.3d

244, 253 (Pa. Super. Ct. 2014) (quoting Restatement (Second) of Torts § 332 (2016)).

The parties agree that Mr. Falcone was at defendant's gas station as a business invitee and thus the following principles of law apply.

"The duty owed to a business invitee is the highest duty owed to any entrant upon land." Truax v. Roulhac, 126 A.3d 991, 997 (Pa. Super. Ct. 2015). Under this duty of care, a landowner cannot escape liability simply by protecting business invitees from "known dangers." Id. It must also protect business invitees from dangers that might be discoverable with reasonable care. Id. Specifically, a landowner is liable for a business invitee's injuries if the landowner:

    (a) Knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees;

    (b) Should expect that they will not discover or realize the danger, or will fail to protect themselves against it; and

    (c) Fails to exercise reasonable care to protect them against the danger.

Rodriguez v. Kravco Simon Co., 111 A.3d 1191, 1193 (Pa. Super. Ct. 2015) (quoting Restatement (Second) of Torts § 343 (2016)). In making out its prima facie case, a business-invitee plaintiff must ultimately prove that the landowner "had a hand in creating the harmful condition, or that he had actual or constructive notice of such condition." Moultrey v. Great A & P Tea Co., 422 A.2d 593, 535 (Pa. Super. Ct. 1980).

A jury may infer a landowner had actual notice of a condition where "the condition is one which the owner knows has frequently recurred." Porro v. Century III Assocs., 846 A.2d 1282, 1286 (Pa. Super. Ct. 2004). This obviates the need for the plaintiff to prove constructive notice. Id. If a plaintiff is unable to demonstrate actual

notice, he or she may still meet its burden by establishing constructive notice. What amounts to constructive notice of a condition depends upon several factors. <u>Hagan v. Caldor Dep't Stores, Inc.</u>, Civ. A. No. 89–7810, 1991 WL 8429, at *4 (E.D. Pa. Jan. 28, 1991) (citing <u>Stais v. Sears Roebuck & Co.</u>, 102 A.2d 204, 206 (Pa. Super. Ct. 1954)). These factors include: (1) the number of persons using the premises; (2) the frequency of such use; (3) the nature of the defect; (4) location of the premises; (5) the condition's probable cause; and (6) the opportunity that the defendant, as a reasonably prudent person, has to remedy the condition. <u>Id.</u>

### B.     Actual Notice

Based on a review of the evidence, whether defendant had actual notice is a disputed question of fact for the jury to resolve.

Mr. Falcone has come forth with ample evidence sufficient to raise a triable issue on this point. One of defendant's employees, who was working at the gas station the night Mr. Falcone was injured, testified she was aware that, over the years, there were recurring gasoline spills in the parking lot. (Doc. No. 44-8, Soldridge Dep. 24–25). These spills would occur both because customers would overflow their tanks while pumping gas and also because "sometimes the pump would malfunction." (<u>Id.</u>) These fuel spills would occur a few times every month. (<u>Id.</u>) Defendant's employees were required to fill out a "Monthly Site Safety Checklist." (Doc. No. 47-1, Ex. 3). This checklist explicitly states that there should be "[n]o gasoline or oil spills" in the parking lot. (<u>Id.</u>) It also requires employees to check a box labeled either "acceptable" or "unacceptable," depending on the presence—or lack thereof—of gas or oil spills. (<u>Id.</u>)

In light of this evidence, the defendant undoubtedly had some knowledge of the danger and frequency of fuel spills if it affirmatively included fuel spills as a dangerous condition on its safety checklist. This is especially true given that defendant's employees were aware the gas pumps would randomly malfunction and customers would cause spills. There is further testimony that defendant required all its employees to check the fuel pumps and parking lot for spills at the beginning of, and throughout, their shifts. (Doc. No. 44-9, Kleitches Dep. 39–40; Doc. No. 44-13, Worman Dep. 51, 59). A jury could reasonably infer, based on the above evidence alone, that the defendant knew gas and oil spills frequently occurred at its gas station.

Defendant relies heavily on Marchante v. Auto Zone, Inc., Civ. Action No. 12-cv-00691, 2013 WL 1389758 (E.D. Pa. Apr. 4, 2013). In that case, the district judge granted summary judgment for the defendant where the plaintiff slipped on oil and fell in defendant's parking lot. Id. The court found that, although there were a few oil spills per week at defendant's store, there was no evidence that oil spills were not "immediately cleaned up" by defendant's employees any time they occurred. Id. at *7.

Unlike in Marchante, here, Mr. Falcone has pointed to evidence sufficient for a jury to infer that defendant's employees failed to clean up spills. Ms. Kleitches, a gas station employee, testified that she was required to check the parking lot for anything that was wrong at the very beginning of her shift. (Doc. No. 44-9, Kleitches Dep. 39–40). Ms. Kleitches worked the day Mr. Falcone was injured. (Doc. No. 44-6). Mr. Falcone slipped on the diesel fuel spill at approximately 9:00 p.m. (Doc. No 44 ¶ 1; Doc. No. 47 ¶ 1). Kleitches had begun her shift less than ten minutes earlier at 8:52 p.m. (Doc. No. 44-6).

6

Thus, based on defendant's policies, Kleitches was required to inspect the parking lot at 8:52 p.m. the day Mr. Falcone was injured. Given that Mr. Falcone slipped on a diesel spill several minutes after Kleitches was supposed to check the parking lot, a jury could obviously infer that Kleitches failed to inspect the parking lot as she was required to.[1] This type of evidence was absent from the Marchante case. See Marchante, 2013 WL 1389758, at *7 (noting that there was no evidence the defendant's employees did not immediately clean up spills).  The instant case is also unlike Marchante because, here, Mr. Falcone indicated that he noticed a large wet spot in the parking lot as he pulled into the store, necessarily suggesting the spill was present for some time before he arrived. (Doc. No. 44-4, Falcone Dep. 139:8–144:16); cf. Marchante, 2013 WL 1389758, at *9 ("Plaintiff's testimony was that he did not notice any spill on the sidewalk when he entered the store.").  Thus, defendant's reliance on Marchante is unavailing.

Defendant continually argues that its parking-lot inspection procedures were adequate. It cites various employees' deposition testimony, arguing that these employees would "check the condition of the pumps when they took cigarette breaks." (Doc. No. 51 at 11 n.2). One employee, who was on duty the day Mr. Falcone was injured, testified she would check the pumps "whenever she went outside of the store, whether it be to smoke a cigarette" or to empty the trash cans. (Id.) Another employee testified that the employees, as a whole, would frequently check for spills in the parking lot. (Id.)

---

[1] This inference necessarily implies that, if Kleitches had inspected the fuel pump as required, then she would have discovered the oil spill Mr. Falcone slipped on.

Defendant's emphasis on these inspection procedures hurts—not helps—its argument. This is because defendant has conceded that Mr. Falcone slipped and fell on diesel fuel in its parking lot. (Doc. No. 44 ¶ 19). Therefore, a jury is entitled to decide whether or not defendant's parking-lot inspection procedures were properly followed the day of Mr. Falcone's incident. One could fairly conclude they were not since—if they had been followed—then Mr. Falcone would not have slipped and fallen on a diesel fuel spill. This too is a genuine issue of material fact.

Defendant persists that summary judgment must be granted based on its premise that fuel spills twice a month are not frequently recurring. Defendant appears to set forth an absolute time-limit rule: "courts . . . do not characterize a frequent occurrence as something that only happens once or twice a month." (Doc. No. 51 at 2). However, none of the cases cited by defendant in support of this proposition take such a hardline approach. Nor are the factual situations in nearly all those cases analogous to this case.

For instance, in Read v. Sam's Club, the frequency of the spills was once every 2.5 months—not several times each month. No. 2:05-cv-00170, 2005 WL 2346112, at *5 (E.D. Pa. Sept. 23, 2005). In Myers v. Penn Traffic Co., the court did not enter judgment for the defendant because of the lack of frequency of the spills. 606 A.2d 926, 931 (Pa. Super. Ct. 1992). Rather, it found for the defendant because there was no evidence from which a jury could infer that the defendant contributed to the presence of the spill on the floor. Id. Myers is unlike this case because Mr. Falcone has adduced evidence that one of the defendant's employees should have inspected the parking lot before he slipped on the diesel fuel spill. Mr. Falcone has also pointed to evidence that he was the nineteenth user

of the fuel pump the day he was injured, as well as the specific times that other people used that fuel pump throughout the day. (Doc. No. 47-1, Ex. 1). From this, a jury could conclude that the fuel spill was there for some time (if caused by a prior customer who used the same pump as Mr. Falcone) and that the defendant failed to discover it. Finally, the portion of Moultrey cited by defendant has nothing to do with the lack of frequency with which spills occurred at the defendant's store. 422 A.2d at 596.

Above all, the seminal case regarding frequently recurring conditions makes no statement about the specific amount of time needed to constitute a frequent recurrence. Morris v. Atlantic & Pac. Tea Co., 121 A.2d 135, 137–38 (Pa. Super. Ct. 1956). It merely states that a condition that is "often repeated" and is not a "mere chance occurrence" may be considered by the jury in finding notice. Id. A jury could reasonably conclude that the gas spills were "often repeated" and not "mere chance occurrences" based on the safety checklists and defendant's policy requiring its employees to continuously inspect the parking lot for gas spills multiple times every day.

Aside from the foregoing, common sense dictates that a gas station should reasonably anticipate there will frequently be gasoline spills in its parking lot. The evidence discussed above is sufficient to create a genuine dispute of fact as to whether a gas or diesel spill is a condition "which [defendant] knows has frequently recurred." Porro, 846 A.2d at 1286. There is thus a genuine dispute of material fact regarding whether the defendant "had actual notice of the condition." Id. Accordingly, summary judgment is not proper.

   **C.**    ***Constructive Notice***

9

Even if defendant were able to establish it had no actual notice, summary judgment would still be improper because there is a genuine dispute of fact regarding whether defendant had constructive notice. Defendant argues that it could not have had constructive notice because Mr. Falcone has not adduced any evidence as to the length of time the diesel fuel was on the blacktop before he fell. This argument is unpersuasive for two reasons.

First, plaintiff has in fact adduced evidence tending to show how long the diesel fuel was on the pavement. Specifically, plaintiff points to a record of purchases that occurred at the gas pump Mr. Falcone used the day he was injured. Defendant does not dispute that this transaction record shows Mr. Falcone was the nineteenth user of that specific gas pump the day he was injured. This record shows the exact times that gas was purchased on that pump throughout the day.[2] Mr. Falcone has also pointed to evidence of the specific times that defendant's employees clocked in the day of his injury. Some of the employees clocked in in the early afternoon, while Ms. Kleitches clocked in at 8:52 p.m. Defendant stresses that its employees were required to check for gas spills frequently throughout the day, including at the beginning of their shifts. (Doc. No. 51 at 11 n.2). This record of gas purchases, the specific times of those gas purchases, the specific times the employees began their shifts, and the employees' duties to check the parking lot, certainly presents a coherent timeline from which both parties could argue how long the spill was on the ground. Confronted with this evidence—especially in light

---

[2] From this, a jury could reasonably infer that one of the previous eighteen customers spilled the fuel and that, depending on what time that happened, one of defendant's employees should have discovered the spill before Mr. Falcone arrived.

of defendant's insistence that its employees frequently checked the parking lot—a jury could fairly conclude the spill was on the ground for some time but that the defendant's employees either (i) failed to discover it, or (ii) knew about it but did not clean it up. Of course, based on the same evidence, the jury could also find that the spill was not on the ground for very long. Either way, it is clear that this is a factual question for the jury to decide. The point is, at this stage, I cannot conclude there is no evidence of the duration of time that the fuel spill was on the ground.

Second, recent Pennsylvania case law closes the door on defendant's argument. Defendant claims that the adequacy of its inspection of the parking lot the night Mr. Falcone was injured is irrelevant to the instant motion. According to defendant, its inspection—or lack thereof—can only be considered after there has been a showing of actual or constructive notice. I disagree.

In Rodriguez v. Kravco Simon Co., the Pennsylvania Superior Court reversed a trial court's granting of summary judgment in a slip-and-fall case. 111 A.3d 1191, 1197 (Pa. Super. Ct. 2015). The trial court granted summary judgment on the basis that the plaintiff failed to point to any evidence that would allow a jury to find that the defendants had actual or constructive notice. Rodriguez, 111 A.3d at 1192. On appeal, the Superior Court agreed with the trial court that there was no evidence from which a jury could conclude the defendant had constructive notice. Id. at 1194. The Superior Court nonetheless reversed the trial court. Id. at 1197.

In doing so, it referenced deposition testimony from the defendants' employees that they were required to sweep and mop the floors daily and then fill out sheets

indicating the same. Id. at 1196. However, during discovery, the defendants failed to produce any of these sheets. Id. Therefore, the Superior Court held:

"With the open possibility that the [Defendants'] employees failed to check the floors as scheduled prior to [plaintiff]'s fall, it is not clear that Defendants' [sic] are entitled to judgment as a matter of law." Id. The court based its decision on language from Comment b to § 343 of the Restatement regarding the duty owed invitees: "To the invitee the possessor owes not only [the duty to disclose known dangers], but also the additional duty to exercise reasonable affirmative care to see that the premises are safe for the reception of the visitor, or at least to ascertain the condition of the land." Id. at 1196–97 (alteration in original).[3]

In other words, the Rodriguez court held that even without actual or constructive notice, there was still a disputed question as to whether the defendant acted affirmatively to inspect the premises to ensure invitees' safety. This question alone precludes summary judgment. Rodriguez's holding parallels § 343's statement that a landowner must exercise reasonable care to discover a condition, even if the landowner does not in fact know about it. See Restatement (Second) of Torts § 343(a) (making landowners liable if they actually know of the condition "*or by the exercise of reasonable care would discover the condition*") (emphasis added).

---

[3] This runs counter to defendant's position that there is only a duty if the plaintiff can establish constructive or actual notice. See Moultrey, 422 A.2d at 596 ("Pennsylvania courts have uniformly held that if the harmful transitory condition is traceable to the possessor or his agent's acts, (that is, a condition created by the possessor or those under his authority), then the plaintiff need not prove any notice in order to hold the possessor accountable for the resulting harm.").

Just like the incident sheets in <u>Rodriguez</u>, here, the defendant has failed to produce any copies of its Monthly Safety Checklists that were filled out by its employees. The defendant has also failed to produce video surveillance footage of the parking lot the day Mr. Falcone was injured.[4] Mr. Falcone has pointed to evidence, confirmed by defendant, that defendant's employees were required to inspect the parking lot multiple times each day. Thus, as in <u>Rodriguez</u>, there is the distinct possibility that defendant's employees failed to inspect the area where the plaintiff fell. Cf. <u>Rodriguez</u>, 111 A.3d at 1196 ("With the open possibility that the ESC employees failed to check the floors as scheduled prior to Rodriguez's fall, it is not clear that Defendants' are entitled to judgment as a matter of

---

[4] None of defendant's reasons for its failure to produce this evidence passes muster. Defendant claims that it did not preserve the video footage of its parking lot the day Mr. Falcone was injured because the video camera was on a loop whereby it would tape over itself every sixty (60) days. Defendant received a letter from Mr. Falcone's counsel on March 26, 2013, informing defendant that he was planning to file suit against defendant on behalf of Mr. Falcone. (Doc. No. 44-14). Because this letter was received 62 days after the incident, defendant argues that the video footage no longer existed. The problem with defendant's position here is two-fold. For one, the record is not clear that the video was on a 60-day loop. When asked how long the video loop was maintained for at the time of plaintiff's injury, defendant's general manager Derek Worman testified: "I don't know for sure." (Doc. No. 44-13, Worman Dep. 20:18). Mr. Worman thought it was approximately sixty days but he was not certain. (<u>Id.</u> 20:18–22). More importantly, though, defendant mistakenly assumes that its duty to preserve the video was not triggered until the day it received a letter from Mr. Falcone's counsel on March 23, 2013. As explained by courts, "[a] duty to preserve is not triggered [ ] at the mere onset of a potential claim or litigation, but litigation need not be imminent either. The obligation to preserve evidence arises when the party has notice that the evidence is relevant to litigation . . . as for example *when a party should have known that the evidence may be relevant to future litigation*." <u>Giuliani v. Springfield Twp.</u>, Civ. Action No. 10–7518, 2015 WL 3604343, at *6 (E.D. Pa. June 9, 2015) (emphasis added). After Mr. Falcone fell in defendant's parking lot, Worman received a call from Mr. Falcone's employer asking if defendant had video surveillance of the day Mr. Falcone was injured. (Doc. No. 44-13 at 17–19). When Worman received this phone call asking about the surveillance footage of Mr. Falcone's fall, defendant was clearly put on notice that this evidence "may be relevant to future litigation." <u>Id.</u> Because it is not clear that this phone call did not come before the video footage looped back, it is a distinct possibility that defendant failed to preserve the video surveillance footage.

Defendant's excuse for not producing the safety checklists is even worse. Defendant admits that these checklists exist and are kept for at least one year after each is filled out. (Doc. No. 51 at 13). Despite this, defendant refused to produce any filled out checklists to Mr. Falcone based on its own self-judicial and cavalier conclusion that these checklists have "no relevance to this lawsuit." (<u>Id.</u> at 13–14). This is patently incorrect. The checklists are directly relevant to the core issue of whether gas spills "frequently occurred" at defendant's gas station. <u>Porro</u>, 846 A.2d at 1286.

I am not persuaded by defendant's reasons for refusing to produce the above materials. The defendant cannot withhold relevant evidence and then rely on its own spoliation in arguing that the plaintiff has not pointed to sufficient evidence to withstand summary judgment.

law"). This, by itself, is sufficient to warrant denial of summary judgment because it leaves open the question of whether the defendant exercised "affirmative care" to ensure that its parking lot was safe. Id. at 1197 (quoting Restatement (Second) of Torts § 343 cmt. b).

In sum, plaintiff has come forth with evidence sufficient to raise a genuine dispute of material fact as to whether defendant had constructive notice. Even without this evidence, summary judgment would be proper simply because there is a question as to whether defendant exercised reasonable care to discover the gas spill.

## V.    CONCLUSION

Plaintiff has come forth with evidence sufficient to raise a genuine dispute of material fact as to whether defendant had actual or constructive notice. Accordingly, I will deny defendant's motion for summary judgment.